MARBURY, Appellant,

v.

INDUSTRIAL COMMISSION OF OHIO et al., Appellees.

[Cite as *Marbury v. Indus. Comm.* (1989), 62 Ohio App.3d 786.]

Court of Appeals of Ohio,
Montgomery County.

No. 11319.

Decided May 10, 1989.

**3.** The contract further provided for interest at ten percent per annum, amortized over a period of thirty years.

*Risa C. McCray*, for appellant.

*Anthony J. Celebrezze, Jr.*, Attorney General, and *James I. Weprin*, Assistant Attorney General, for appellee Industrial Commission of Ohio et al.

*Mary Biagioli*, for appellee Sinclair Community College.

---

FAIN, Judge.

Plaintiff-appellant, Anita Marbury, appeals from a summary judgment holding that, as a matter of law, she is not entitled to workers' compensation benefits because the injury for which she seeks compensation was not received in the course of her employment. We agree with the trial court that, even when the evidence is viewed in a light most favorable to Marbury, summary judgment was properly entered against her. Accordingly, the judgment of the trial court will be affirmed.

I

At the time of her injury, Marbury was the Assistant Director of Student Records and Registration for defendant-appellee Sinclair Community College ("Sinclair"). She was attending a conference presented by the American Association of College Registrars and Admissions Officers in Baltimore, Maryland. It is undisputed that Marbury was authorized to attend the conference, that her expenses directly related to the conference were reimbursed by Sinclair, and that her attendance at the conference related to her job.

The conference meetings took place between 9:00 a.m. and 5:00 p.m., during six days in April 1986. At 5:00 p.m. on one of the days in the middle of the conference, a bus tour of Washington, D.C. was available to the conference participants at an additional cost. Marbury went on the bus tour. The parties disagree concerning whether Marbury was encouraged by her supervisor, who was also present, to participate in the tour. The parties also disagree about the extent to which conversations in which Marbury participated, on the bus during the tour, related to her job. There is also a dispute concerning her reimbursement for the expense of the bus tour. Although it appears that she was reimbursed, Sinclair presented evidence to establish that she was not entitled to reimbursement—that Marbury had characterized the bus tour as a "dinner meeting" (a brown-bag meal was served on the bus), and that Sinclair would not have reimbursed this expense had it understood that it was for a bus tour.

In any event, the last stop on the tour, between 9:30 p.m. and 10:00 p.m., was at a souvenir shop in Washington, D.C. The participants were free to exit the bus and shop at the souvenir shop, but were not required to do so. At her deposition, Marbury testified that her purpose in entering the souvenir store was to purchase a T-shirt for her daughter, which she did. Upon her entry into the store, she slipped and fell on the store floor, sustaining injuries.

Marbury filed a claim for workers' compensation benefits to compensate her for the injuries that she sustained as a result of the fall. Her claim was allowed by a district hearing officer. The Dayton Regional Board of Review of the Industrial Commission reversed the district hearing officer's decision, holding that Marbury's injury did not occur in the course of her employment. Upon Marbury's administrative appeal, the Industrial Commission vacated the decision by the Dayton Regional Board of Review and reinstated the district hearing officer's decision allowing her claim.

Sinclair appealed to the Montgomery County Common Pleas Court. That court granted Sinclair's motion for summary judgment, holding that the injuries for which Marbury sought compensation did not occur in the course of her employment. From that judgment, Marbury appeals.

## II

Marbury's sole assignment of error is as follows:

"The trial court erred and abused its discretion in granting defendant's motion for summary judgment."

Marbury contends that, when the evidence is viewed in a light most favorable to her, there is a genuine issue of material fact as to whether the injuries she received were sustained by her in the course of her employment. Defendants-appellees James Mayfield, Administrator of the Bureau of Workers' Compensation, and the Industrial Commission of Ohio take the same position.

Injuries for which an employee may recover workers' compensation benefits are defined in R.C. 4123.01(C) as " * * * any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." The issue in this appeal is whether the injuries Marbury received as a result of her slip and fall in the Washington, D.C. souvenir shop were "received in the course of, and arising out of" her employment.

Although *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, is not directly on point, that case does discuss circumstances which bear on the issue of whether there is a sufficient causal connection to entitle the injured party to participate in the Workers' Compensation Fund. Circumstances mentioned in that opinion include: "(1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.* at 444, 20 O.O.3d at 378, 423 N.E.2d at 98. All of these factors militate against Marbury in this case. There is no apparent benefit that Sinclair could have expected to receive from Marbury's presence in the souvenir shop for the declared purpose of purchasing a T-shirt for her daughter.

Marbury relies upon *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 53 O.O.2d 6, 263 N.E.2d 231, 47 A.L.R.3d 560. In that case, a small business employer sponsored a picnic for its employees for the purpose of promoting good employee relations. Swimming facilities were provided at the picnic, and the claimant was injured in a dive while making use of the swimming facilities. The court held that the injury arose in the course of the claimant's employment, so that the injury was compensable.

In *Kohlmayer*, the activity that resulted in injury was an integral part of the event sponsored by the employer.

The case before us would seem to be closer to *Perry v. American Bakeries Co.* (1964), 262 N.C. 272, 136 S.E.2d 643. In that case, a claimant who sustained a diving injury was denied workers' compensation benefits. The claimant was attending a sales meeting in a hotel, and all of his expenses at the hotel were reimbursed by his employer. The claimant decided to swim in

the hotel's pool after having gone out to dinner with another employee following a social hour to which all of the attending employees had been invited. The court held that the claimant's swimming in the hotel's pool was not sufficiently connected to the employer-sponsored sales meeting. Accordingly, the court held that the injuries sustained while swimming were not compensable.

Even a travelling salesman, who was held to have been within the course and scope of his employment while eating and sleeping in a foreign city during a sales trip, was held to have been outside the course and scope of his employment when he went on a purely personal mission of his own. *Hardware Mut. Cas. Co. v. McDonald* (Tex.App.1973), 502 S.W.2d 602.

In the case before us, it is not disputed that Marbury was within the course of her employment, at least for workers' compensation purposes, when she participated in the Baltimore conference. When the evidence is viewed in a light most favorable to Marbury, a reasonable mind might conclude that she was still within the course of her employment, for workers' compensation purposes, when she participated in the bus tour of the Washington, D.C. area. However, reasonable minds can only come to the conclusion that when she left the bus and entered a souvenir shop in Washington for the purpose of purchasing a T-shirt for her daughter, she was on a purely personal mission of her own, having nothing to do with her employer's purposes, and was therefore outside the course of her employment.

Marbury's sole assignment of error is overruled.

### III

Marbury's sole assignment of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

I must respectfully dissent from the opinion of the majority. I believe that the injury experienced by Marbury was one suffered in the course of and arising out of her employment.

The majority, construing the facts most favorably for Marbury, has found that she was acting in the course of her employment while on the bus tour. I concur in that conclusion. Marbury was at the Baltimore meeting at the direction and expense of her employer for the purpose of improving her knowledge and skills as a college registrar. There was a direct benefit to her employer as well as to Marbury.

The bus tour was organized by an Ohio association of registrars at the meeting. Though it had recreational and entertainment aspects, the record supports the conclusion that its participants engaged in discussions and exchanges concerning their common field of work. Marbury's immediate supervisor encouraged her to go on the tour. The supervisor's act gave the employer's sanction to Marbury's participation in the tour and it superseded any earlier statements by other employer representatives that bus tours were not a part of her business trip.

I would not follow the analysis of the majority focusing on specific activities of tour participants. Distinctions between typical bus tour activities, such as views of historic sites, rest stops, tourist souvenir shopping, and the like, create distinctions overly fine and not material to a determination of whether they were in the course of or arising out of employment. Marbury's desire to purchase a shirt for her daughter does have a personal purpose. However, any other stop or embarkation from the bus would be much the same.

The question of coverage is more properly resolved by the analysis employed in the line of cases concerning "recreational activities" of employees undertaken at the request or direction of an employer. See, *e.g.*, *Ott v. Indus. Comm.* (1948), 83 Ohio App. 13, 38 O.O. 127, 82 N.E.2d 137; *Miller v. Young* (C.P.1961), 93 Ohio Law Abs. 68, 25 O.O.2d 268, 193 N.E.2d 558; *Beck v. Young* (1962), 119 Ohio App. 109, 26 O.O.2d 264, 197 N.E.2d 215; and *Columbia Gas of Ohio, Inc. v. Sommer* (1974), 44 Ohio App.2d 69, 73 O.O.2d 60, 335 N.E.2d 743.

In *Ott*, an industrial employee who suffered a heart attack while playing in an employer-sponsored ball game was found to be covered for his injury and resulting death. The court, in finding that the injury was in the course of and arising from his employment, observed:

" * * * It seems also apparent that both employee and employer received considerations from this activity which was the direct outgrowth of a recreational program which was not only authorized by the corporation, but definitely sponsored by it, and the means of its accomplishment furnished at the expense of the corporation." *Ott, supra*, 83 Ohio App. at 20, 38 O.O. at 130, 82 N.E.2d at 140.

In the more recent case of *Columbia Gas v. Sommer, supra,* coverage was found for an employee injured in an after-hours baseball game for employees sponsored by the employer. The court observed that such activities produce improved employee relationships which work to the benefit of employers. The court found that the "business related benefit" alone, though intangible and not immediately measurable, was sufficient to impose upon the company an employment risk incident to the activity, and that the injury therefore arose out of and in the course of employment.

The bus tour was a recreational activity incident to the purpose of Marbury's business trip to Baltimore. It was undertaken at her employer's direction or encouragement. The employer may be expected to realize a benefit from the tour; it exposed Marbury to other persons in her line of work from whom she should be expected to gain knowledge to improve her job skills. It also relieved the tedium of a business meeting and made the whole trip more attractive to and productive for Marbury. Both Marbury and her employer "received considerations from this activity." *Ott, supra.*

The test for coverage of an injury received in a recreational activity organized or promoted by the employer is whether there was a business-related benefit to the employer. Personal benefits to the employee are a natural part of those activities and should not defeat coverage.

The bus tour was in the course of Marbury's employment because she participated at her employer's direction. It arose out of her employment because there was a causal connection between the employment and the tour. The excursion to the souvenir shop was a regular part of the tour and cannot be separated from other activities on the tour because it had a personal purpose or benefit, as recreational activities will.

I would find coverage.