KOGER, Appellant,

v.

GREYHOUND LINES, INC., d.b.a. Greyhound Bus Company, et al., Appellees.

[Cite as *Koger v. Greyhound Lines, Inc.* (1993), 90 Ohio App.3d 387.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920551.

Decided Sept. 22, 1993.

388

*Young, Reverman & Napier* and *Stephen S. Mazzei,* for appellant.

*Taft, Stettinius & Hollister* and *Charles M. Stephan,* for appellee Greyhound Lines, Inc.

*Lee Fisher,* Attorney General, and *William D. Haders,* Assistant Attorney General, for appellees Patrick G. Mihm, Administrator, and Industrial Commission of Ohio.

---

GORMAN, Judge.

Plaintiff-appellant, Marshall G. Koger, appeals from the trial court's order granting summary judgment in favor of his employer, Greyhound Lines, Inc. ("Greyhound"), and thereby denying his claim for workers' compensation benefits.[1] The issue raised in Koger's only assignment of error is whether an injury sustained on the employer's premises by an employee while walking a picket line, during a strike organized by his union, is compensable under R.C. 4123.01(C). We hold that it is not.

All facts relied upon by the trial court in its memorandum of decision granting Greyhound's motion for summary judgment were contained in Koger's answers to the interrogatories propounded by Greyhound, and, therefore, are undisputed for purposes of Civ.R. 56. Those facts establish that on March 27, 1990, a strike related to renewal of the collective-bargaining agreement between the Amalgamated Transit Union and Greyhound was in progress. Koger, a member of the union, was on picket duty at the east gate of Greyhound's Cincinnati terminal. A Greyhound bus entered the gate and hit him, causing the injuries which were the subject of his claim for workers' compensation benefits. The Dayton Regional Board of Review affirmed the district hearing officer's denial of Koger's claim, and the Industrial Commission denied his appeal. He then appealed to the common pleas court under R.C. 4123.519, which held that Koger's injury was not received in the course of his employment.

Under Ohio workers' compensation law, an injury sustained by an employee is compensable only if it "was received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). In *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1274, the Ohio Supreme Court recognized the "conjunctive nature" of the "two pronged" requirements of the coverage formula: (1) "in the course of" the employment, and (2) "arising out of" the employment. To establish a compensable injury, the court in *Fisher* held that the employee must satisfy both requirements, subject to the liberal construc-

---

1. This cause has been *sua sponte* removed from this court's accelerated calendar.

tion of workers' compensation statutes in favor of awarding benefits to employees as provided in R.C. 4123.95.

The first prong of the coverage formula, "in the course of employment," relates to the time, place, and circumstances of the injury. *Fisher v. Mayfield, supra,* at 277, 551 N.E.2d at 1274. This prong focuses on whether the employee is acting for the employer, or for himself, or for another at the time of the injury. In his treatise Workmen's Compensation Law of Ohio (2 Ed.1971) 75, Section 5.3, James L. Young has proposed consideration of the following constituent factors relative to this prong:

a.  the fact of payment or the expectation of payment;

b.  the source of payment;

c.  control over the activity and by whom it is exercised, a most important factor;

d.  the situs of the employment, which may be fixed, semi-fixed or variable;

e.  the situs of the accident;

f.  a major factor is time, and there the time of the injury and the time of employment are both significant.

These factors concentrate on what constitutes personal activity and what constitutes work activity.

In this appeal, it is significant that Koger was subsisting at the time of his injury on strike benefits paid by his union, from which his union dues were deducted. His activities on the picket line were controlled by a schedule the union posted. Although he retained his status as a Greyhound employee during the strike, Koger's presence on the picket line at the expense and direction of his union can only be viewed as personal activity and not as activity incidental to his employment duties. Union picketing of the employer during an organized strike is not the type of activity that satisfies those constituent factors referred to by Young, and is not consistent with the concept of doing something for the employer during the employee's course of employment. In accordance with our holding, Professor Larson, "a leading scholar in this area of the law," see *Fisher v. Mayfield, supra,* has stated that "picketing and other strike activities are not within the course of employment." 1A Larson, The Law of Workmen's Compensation (1984) 5–413, Section 27.33(b).

The second prong of the coverage formula, "arising out of" the employment, relates to the causal connection between the employment and the employee's injury. *Fisher v. Mayfield, supra,* 49 Ohio St.3d at 277, 551 N.E.2d at 1274. Citing the syllabus in *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, the court in *Fisher* stated:

"Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Fisher v. Mayfield, supra,* at 277, 551 N.E.2d at 1274.

The undisputed facts in this appeal may arguably satisfy the first two factors announced in *Lord v. Daugherty, supra,* but Koger's presence on the picket line cannot be deemed a benefit to Greyhound, despite his argument that the picketing was in furtherance of renewing the collective-bargaining agreement between Greyhound and the union. Section 501(2) of the Labor Management Relations Act of 1947 defines a "strike" as a "concerted *stoppage of work* by employees." (Emphasis added.) Section 142(2), Title 29, U.S.Code. In *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223–224, 27 O.O.2d 122, 122, 199 N.E.2d 3, 5, the Ohio Supreme Court stated that "a 'strike' is a *cessation of work* by employees in an effort to obtain more desirable terms with respect to wages, working conditions, etc. * * *." (Emphasis added.) The establishment of this confrontational process between the union and the employer during stoppage of work can scarcely be said to benefit the employer or the employer's interests. Koger's activity, at the time of his injury, was in pursuit of his own competing interests with Greyhound rather than his common interests with Greyhound, and, contrary to his assertion, is distinguishable from injuries sustained by an employee at an employer-sponsored social event held to benefit the employer by creating a harmonious working atmosphere through heightened employee morale. See *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 53 O.O.2d 6, 263 N.E.2d 231; 1A Larson, The Law of Workmen's Compensation, *supra,* 5–168, Section 22.33. Accordingly, his claim likewise fails under the "arising out of" prong of the coverage formula.

Because no genuine issues of material fact remained to be litigated; because Greyhound was entitled to judgment as a matter of law; and because reasonable minds could come to but one conclusion, that conclusion being adverse to Koger, the trial court properly granted Greyhound's motion for summary judgment under Civ.R. 56(C). See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. Accordingly, Koger's single assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and HILDEBRANDT, J., concur.